JH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUTO METER PRODUCTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 4587 |
| ) | |
| MAXIMA TECHNOLOGIES & SYSTEMS, ) | Judge Nan R. Nolan |
| LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Auto Meter Products, Inc. has filed suit against Defendant Maxima Technologies & Systems, LLC alleging trademark infringement and unfair competition under 15 U.S.C. §§ 1114 and 1125, and under Illinois common law. Currently before the court is Auto Meter's motion to compel complete answers to Interrogatory Nos. 12, 13, and 15. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

Auto Meter develops, manufactures, and sells automotive measuring instruments, such as tachometers, speedometers, and gauges for measuring oil pressure, oil temperature, water temperature, vacuum, fuel pressure, and fuel levels. In connection with that business, Auto Meter owns the Super Bezel Trademark, Principal Registration No. 2,883,435 (the '435 Registration), and the "ULTRA-LITE" trademark, Principal Registration No. 1,967,655 (the '655 Registration). It also owns the trade dress for the "Monster Tachometer."

On May 16, 2003, Auto Meter filed a complaint with the International Trade Commission ("ITC") seeking to stop 19 respondents from importing and selling imitation tachometers and gauges that infringe Auto Meter trademarks. Maxima was not a respondent in that action, but was involved as a third party and produced documents to the named respondents. In this lawsuit against Maxima, Auto Meter alleges that Maxima's "Stewart Warner Performance" series of

tachometers, gauges, and speedometers infringes the '435 and '655 Registrations, and the Monster Tachometer Trade Dress.

Prior to the close of fact discovery, Auto Meter served Maxima with several contention interrogatories, including the following:

> Interrogatory No. 12: State fully the basis, including all supporting facts, documents, exhibits, testimony and/or expert opinions, for Maxima's allegations in paragraphs 1-5 of its affirmative defenses that Auto Meter's Super Bezel Trademark, Associated Trade Dress, and Monster Tachometer Trade Dress are functional and that Auto Meter is not entitled to any trade dress protection; that Auto Meter's Super Bezel Trademark, Associated Trade Dress, and Monster Tachometer Trade Dress are not inherently distinctive and have not acquired secondary meaning; that the relief requested in Auto Meter's Complaint is barred by laches and that Auto Meter unreasonably delayed in filing suit; and that Maxima's use of the term "Ultra-Shift Light" constitutes a fair use.
>
> Interrogatory No. 13: State fully the basis, including all supporting facts, documents, exhibits, testimony and/or expert opinions, for Maxima's allegation that its accused products do not infringe Auto Meter's trade dress and trademark rights asserted in this action.
>
> Interrogatory No. 15: State fully the basis, including all supporting facts, documents, exhibits, testimony, and/or expert opinions, for Maxima's counterclaim.

Maxima initially responded to these interrogatories on February 7, 2006, directing Auto Meter to its amended answer and stating that "other facts may be disclosed in the course of discovery." (Ex. 4 to Pl. Mem., at 9-11.) On June 30, 2006, Maxima submitted supplemental responses stating that "[d]iscovery is on-going and Maxima will supplement this response as discovery progresses." With respect to Interrogatory No. 15, Maxima further directed Auto Meter to "the documents produced in response to Auto Meter's document requests." (Ex. 5 to Pl. Mem., at 9-10.)

Maxima supplemented its discovery responses a second time on September 6, 2006, the original deadline for fact discovery.[1] Auto Meter found these responses inadequate and ultimately filed a motion to compel on September 29, 2006. On October 5, 2006, Auto Meter conducted a continued deposition of Maxima's President and CEO Oddie Leopando, who had been designated

---

[1] On September 11, 2006, the court agreed to extend fact discovery to October 6, 2006. (Minute Order of 9/11/06, Doc. 51.)

2

as the company's Rule 30(b)(6) witness and who was originally deposed on August 17, 2006. During the continued deposition, Auto Meter questioned Mr. Leopando about the September 6, 2006 supplemental responses. On October 17, 2006, Maxima supplemented its responses a third time, adding still new contentions in support of its defenses and counterclaim. (Ex. B to Def. Resp.) Auto Meter insists that Maxima should be barred from relying on "any contentions, factual bases, and documents not fully disclosed in its October 17 supplemental response, or in its August 17 and October 5 Rule 30(b)(6) depositions." Auto Meter also seeks to recover attorneys' fees and costs incurred in pursuing this motion to compel.

## DISCUSSION

Contention interrogatories, such as those at issue here, basically "require the answering party to commit to a position and give factual specifics supporting its claims." *Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995). "When one party poses contention interrogatories after considerable discovery, and the opposing party refuses to answer the interrogatories, courts routinely compel the resisting party to answer the interrogatories." *Calobrace v. American Nat'l Can Co.*, No. 93 C 999, 1995 U.S. Dist. LEXIS 1371, at *3 (N.D. Ill. Feb. 3, 1995) (citing *Rusty Jones, Inc. v. Beatrice Co.*, No. 89 C 7381, 1990 WL 139145, at *2 (N.D. Ill. Sept. 14, 1990)).

### A.     Interrogatory Nos. 12 and 15

Interrogatory No. 12 seeks information regarding Maxima's affirmative defenses. Interrogatory No. 15 requests the facts and documents supporting Maxima's counterclaim, which seeks cancellation of Auto Meter's Super Bezel Trademark based on Maxima's affirmative defenses. Auto Meter argues that Maxima has engaged in a pattern of providing deficient answers to these interrogatories, and then serially supplementing those answers with new allegations and citations. For example, at his October 5, 2006 30(b)(6) deposition, Mr. Leopando purported to

3

disclose all of the factual bases and evidence for Maxima's functionality defense. (Leopando Dep., at 517, 518-91.) In the October 17, 2006 supplemental response, however, Maxima newly asserted that it is additionally relying on "documents addressing functionality from the International Trade Commission proceeding." (Ex. B to Def. Resp., at 3.) According to Auto Meter, the ITC record consists of more than 75,000 pages, but Maxima has not identified "a single one of the documents from that mountain of materials that it expects to rely upon for its functionality allegations." (Pl. Reply, at 6.)

Similarly, with respect to Maxima's defense that Auto Meter's trademarks/trade dress lack secondary meaning, Maxima produced at the October 5 deposition three old gauges made by the now defunct Sun Electric Company in the 1960s and 1970s. (Pl. Reply, at 6 n.7.) Mr. Leopando then testified that these were the only historical Sun products upon which Maxima intended to rely. (Ex. E to Def. Resp., at 598-609, 615.) In the October 17, 2006 supplemental response, however, Maxima referenced some 36 additional gauges listed in the expert report of a Mr. Behrens from the ITC case. (Ex. B. to Def. Resp., at 5; Pl. Reply, at 6.) Maxima also stated for the first time that "evidence concerning third-party gauges and tachometers can be found in the production of documents and gauges which Auto Meter inspected on September 26, 2006." (Ex. B to Def. Resp., at 5.) This production apparently comprises approximately 36 bankers boxes of old gauges, automotive magazines, brochures, and documents. Auto Meter claims that Maxima has not identified which materials from those boxes support its defenses or counterclaim. Auto Meter also objects that Maxima "continues to withhold its contentions . . . concerning the facts necessary to establish the relevance of those old gauges (or the other gauges it relies upon) to the use of 'secondary meaning,' e.g., the channels of trade into which they are sold, their market position and market segments, features relevant to consumers, their sales and market share, etc." (Pl. Reply, at 7.)

4

In addition, Maxima apparently raised an entirely new contention supporting its secondary meaning defense in the October 17 supplemental response; namely, that Auto Meter's small percentage of sales to private label and original equipment customers ("OEM") eliminate the secondary meaning of the Super Bezel trademark. (Ex. B to Def. Resp., at 5.) Maxima claims that unspecified "licensed third-parties" to the Super Bezel mark and unspecified "documents produced by Auto Meter concerning OEM and private label sales and customers, artwork for OEM and private label dial faces" support this new assertion.

As for Maxima's laches defense, the company still has not produced documents Mr. Leopando mentioned at his deposition that purportedly show that Auto Meter received certain "strategic information" about Maxima's products during a Maxima plant tour. (Pl. Reply, at 8-9.) Nor has Maxima identified the individuals involved in that plant tour, or the Auto Meter personnel who allegedly spoke about the Maxima products during a trade show. (*Id.*)

At this late stage of the case, the court agrees that it is time for Maxima to fully and completely answer Auto Meter's interrogatories. Fact discovery is at an end, yet Maxima is still referencing new documents and materials supporting its defenses and counterclaim. As noted, contention interrogatories "require the answering party to commit to a position and give factual specifics supporting its claims." *Thomas & Betts Corp. v. Panduit Corp.*, No. 93 C 4017, 1996 WL 169389, at *2 (N.D. Ill. Apr. 9, 1996). The Federal Rules, moreover, "are designed to promote liberal discovery in an effort to narrow the issues for trial and prevent unfair surprise." *Wright v. Touhy*, No. 97 C 742, 2003 WL 22439864, at *4 (N.D. Ill. Oct. 28, 2003).

Maxima is ordered to identify (1) the specific ITC documents that support its functionality defense; (2) the specific gauges and documents from the September 26, 2006 inspection and the Behrens report that it intends to rely upon for its secondary meaning defense; (3) the facts supporting the relevance of these third-party gauges; (4) the documents Mr. Leopando mentioned at his deposition, and any other documents that purportedly show that (a) Auto Meter received

certain "strategic information" about Maxima's products during a Maxima plant tour, and (b) Maxima suffered prejudice from Auto Meter's delay in pursuing its claims; (5) the Auto Meter personnel who participated in the Maxima plant tour and/or attended the trade show, and the specific statements they made which support Maxima's laches defense; and (6) the specific documents and data supporting Maxima's assertion that Auto Meter's small percentage of sales to private label and original equipment customers eliminate the secondary meaning of the Super Bezel trademark. Any facts or documents not so disclosed cannot be relied upon in this case.

Contrary to Maxima's assertion, none of this information constitutes protected work product. (Def. Resp., at 8.) Auto Meter is requesting the identification of facts, documents, individuals, statements, and products supporting Maxima's defenses and counterclaim, and not Maxima's legal theories or analyses. Responses to these requests will not, as Maxima suggests, provide Auto Meter with "a 'playbook' of how Maxima will present its defenses and counterclaim at trial." (Id. at 10-11.) See, e.g., Fridkin v. Minnesota Mut. Life Ins. Co., No. 97 C 332, 1998 WL 42322, at *4 (N.D. Ill. Jan. 29, 1998) (work-product privilege did not protect defendant from producing documents, witnesses, and industry/company policy supporting its defense); Mead Corp. v. Riverwood Natural Resources, Corp., 145 F.R.D. 512, 517-18 (D. Minn. 1992) (rejecting alleged infringer's work-product immunity defense to answering interrogatories that sought "objective facts upon which defenses interposed were based and the identity of persons with knowledge of those facts.") Auto Meter's motion to compel the above information is granted.

**B.     Interrogatory No. 13**

Interrogatory No. 13 seeks information supporting Maxima's defense of non-infringement. In the October 17, 2006 supplemental response, Maxima states that it is relying on "the overall different look and impression of its products as compared to Auto Meter's; the prominent display of distinguishing brand names and the use of distinguishing packaging; [and] that there have been

6

no instances of confusion." (Ex. B to Def. Resp., at 9.) Maxima refuses, however, to identify (1) how the Maxima products create a different look and impression, including identification of distinguishing features; (2) the distinguishing brand names, how they are displayed, and how their display supports Maxima's contention of non-infringement; and (3) the distinguishing packaging and how its use supports Maxima's contention of non-infringement. (Def. Resp., at 9.) Maxima argues that engaging in a detailed comparison of the parties' products and packages "would require Maxima to reveal its legal strategy and positions with regard to the entire case." (*Id.*) The court disagrees.

As with Interrogatory No. 12, Auto Meter seeks the facts upon which Maxima's non-infringement defense is based, and not any legal theory or analysis. Indeed, Maxima cannot prevail on its non-infringement defense in the absence of specific facts. *See, e.g., Homefront, Inc. v. Cashmere Crafts, Inc.*, No. C 05-0597 PJH, 2005 WL 3369988, at *8 (N.D. Cal. Dec. 12, 2005) ("[S]imply to assert that the accused products did not actually infringe Homefront's copyrights is far from providing facts that support a defense of non-infringement.") The motion to compel is granted with respect to Interrogatory No. 13.

### C. Expert Opinions

In addition to the information discussed above, Interrogatory Nos. 12, 13, and 15 all seek expert opinions supporting Maxima's defenses and counterclaim. The court agrees with Maxima that these disclosures are properly addressed pursuant to the expert discovery schedule set by this court on September 11, 2006. (Minute Order of 9/11/06, Doc. 51.) This portion of Auto Meter's motion to compel is denied.

### D. Sanctions

In light of the above ruling, the court finds that Auto Meter has not been harmed by Maxima's delay in responding to the contention interrogatories and declines to award sanctions.

*Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 888 (7th Cir. 2004) ("A district court enjoys broad discretion in declining to impose discovery sanctions and exclude evidence."); *Najieb v. Chrysler-Plymouth*, No. 01 C 8295, 2002 WL 31906466, at *3 n.10 (N.D. Ill. Dec. 31, 2002) ("Th[e] Court has broad discretion to determine whether to issue discovery sanctions.")

### CONCLUSION

For the reasons stated above, Auto Meter's motion to compel [Doc. 54] is granted in part and denied in part. Maxima is ordered to provide Auto Meter with further answers to Interrogatory Nos. 12, 13, and 15 consistent with this opinion by November 30, 2006.

ENTER:

Dated: November 6, 2006

Nan R. Nolan
NAN R. NOLAN
United States Magistrate Judge